Last case of the day, Wallace against Baldwin, number 17-2427. It's my understanding that we do not expect any participation from the defendants in this case. Is that correct? That's correct, your honor. Okay. There's a lot of decks to clear after this. Understood. All right. Thank you, Mr. Case. Thank you. My name is Tom Case. I represent Maurice Wallace. Mr. Wallace has been in solitary confinement for 11 years. He filed this case to, among other things, try to get out of solitary confinement, but he couldn't pay the filing fee. In solitary confinement, you're not allowed to work, so he can't earn money and save up to pay the fee, and he doesn't have the kinds of relationships with friends or family such that he can borrow the money. So he filed an IFP petition. District Court denied that petition, making two findings. Number one, Mr. Wallace has three strikes. That is, three cases that have been dismissed as frivolous, malicious, or for failure to state a claim. And the District Court also found that Mr. Wallace is not under imminent danger of serious physical injury. Because both of those findings are incorrect, this Court should vacate and remand the judgment. And Mr. Wallace offers three arguments as to why those findings were incorrect, and if we prevail on any one of the three, the correct course would be to vacate and remand. Now, the first argument is that Mr. Wallace is, in fact, under an imminent danger of serious physical injury solely because he is in solitary confinement. And I believe our brief in the amicus brief spent a lot of time explaining how solitary confinement itself increases the risk to any inmate, Mr. Wallace included, of self-harm, of self-mutilation or suicide. And that risk has to be understood as imminent, because under this Court's precedence, and I'm thinking of Louis V. Sullivan, imminence is understood reasonably. Imminence can't be construed so narrowly as to deprive a prisoner of a reasonable opportunity to protect themselves from foreseeable harm. And the foreseeable harm we're talking about here, the risk that solitary confinement will lead someone to hurt themselves, that's not a predictable harm. Those aren't rational acts. That's not something where the prisoner can say, I'm okay for a month, but on month two, things are going to go bad for me. I think in the amicus brief and also in our brief, we discussed the idea that suicidal ideation ebbs and flows and that what seems fine one day can be too much another day. So I think to give effect to this Court's take on imminence, we have to understand this risk as imminent in order to give inmates like Mr. Wallace and his position the opportunity to protect themselves. And that's argument one. Simply by dint of solitary confinement, he is in imminent danger of serious physical injury from self-harm. Argument number two is a narrower version of argument number one. And this comes from the Court's recent Sanders v. Melvin case. And Sanders v. Melvin said, in effect, that if you have prolonged solitary confinement, serious mental illness, and a history of committing self-harm, then you have plausibly alleged that you are under imminent danger of serious physical harm. And I think like Mr. Sanders, Mr. Wallace has been in solitary confinement for a very long time. Mr. Sanders, eight years, Mr. Wallace now 11. Both men have been designated as seriously mentally ill by the Illinois Department of Corrections. And both men have attempted to commit suicide while in solitary confinement. I believe Mr. Sanders had one act of self-mutilation, two suicide attempts. Mr. Wallace has attempted to kill himself five times. And the record is unclear about whether the first two were in solitary confinement or when he was outside in the world. But we know that at least three of the attempts have been while incarcerated and in solitary confinement. So I think if the Court was so inclined, it could dispose of this case in a sentence and simply say vacated and remanded C. Sanders v. Melvin. Our third argument is that we don't need to get to whether Mr. Wallace is under an imminent danger of serious physical harm because, in fact, he only has two strikes. The District Court relied on for a strike an opinion in Westifer v. Sanders, a case that Mr. Wallace did not file. Westifer was a completed class action to which Mr. Wallace was an absent member. Mr. Wallace filed an affidavit and mentioned wanting a temporary restraining order about practices in the prison, things that were unrelated to the class action. The Court construed Mr. Wallace's affidavit as a motion to intervene. So construed, the District Court undertook the Rule 24 analysis, said this doesn't fly, he can't intervene ten years into the litigation and after it's already gone to judgment. And after denying the motion to intervene, said I'm going to treat this like a strike because this is functionally equivalent. And while I think there's some logic there, I think you can't turn textually the denial of a motion into the dismissal of an action. And I think what District Courts could do in that circumstances if they want to prevent inmates from end running around their strikes is to order the clerk to docket the attempted intervention as a separate case and let it proceed from there. They can grant the motion and intervention and then dismiss the complaint and intervention as frivolous, malicious, or for failure to state a claim. I think there is a way to satisfy the concerns the District Court had. In similar circumstances, for example, with successive habeas petitions, we've made it pretty clear that District Judges have to warn somebody that this unorthodox filing is likely to be construed. Do you want it to be construed as your filing that would count against you and you have an opportunity to withdraw it? I think that we would love that. In this case, Mr. Wallace didn't get that warning. He made his filing. Whether he would have figured it out is another question, but I don't know. Totally true. I think that's something we hope that the Court remembers here. We're at a pre-answer, pre-discovery record on all of this, and I think we've done our best and the amici have done their best to give you the information which makes us view solitary confinement as something that would put an inmate under an imminent danger of serious physical harm. If there are no further questions, I'm happy to let the Court have lunch. We have a little work we have to do before we get to eat lunch, but Mr. Case, thank you very much to you and to your firm for taking the Court's appointment. You've done a great service to your client and to the Court in doing that. The case will be taken under advisement.